J-S28030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF A.G.S. & M.R.S., MINORS

APPEAL OF: M.M., MOTHER

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1881 WDA 2016

Appeal from the Order Entered November 7, 2016
In the Court of Common Pleas of McKean County
Orphans' Court at No(s): 42-15-0107 & 42-15-0107-1

BEFORE: OLSON, MOULTON, and STRASSBURGER[*], JJ.

MEMORANDUM BY MOULTON, J.: **FILED JUNE 06, 2017**

M.M. ("Mother") appeals from the November 7, 2016 orders entered in the McKean County Court of Common Pleas granting the petitions filed by the McKean County Children and Youth Services ("CYS"), and involuntarily terminating her parental rights to her children, A.G.S., born in June 2013, and M.R.S., born in September 2014, ("Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b). We affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In separate orders entered on that same date, the trial court terminated the parental rights of S.S. ("Father"). Father has filed a separate appeal from the termination of his parental rights at Docket No. 1880 WDA 2016, which we address in a separate Memorandum, as did the trial court.

Both Mother and Father ("Parents") have a lengthy history of drug abuse and incarceration.[2]  The trial court found the following facts:

> [M.R.S.] was in the care of her Parents until September of 2014.  [A.G.S.] was born addicted to Methadone.  CYS was notified by medical providers regarding [A.G.S.'s] condition[,] and CYS initiated an investigation shortly after her birth and before she was released by the hospital.  CYS filed Petitions for Dependency on September 29, 2014.  Several hearings were held to address the Dependency Petitions and to review the status of the dependency cases following disposition.

Tr. Ct. Memorandum and Order, 11/7/16, at 1 (unpaginated) ("Termination Op.").[3]

The trial court adjudicated Children dependent on October 6, 2014, and placed Children in the care of B.L. ("Foster Mother") and M.L. ("Foster Father") ("Ls" or "Foster Parents").  Children remain with Foster Parents, *id.* at 10, and are doing well in their care, *id.* at 3.

_____

[2] Prior to A.G.S. being removed from Parents' care and custody, Father, Mother, and A.G.S. resided with M.S. ("Paternal Grandmother").  Tr. Ct. Memo. and Order, 11/7/16, at 8 (unpaginated).  Paternal Grandmother provided the majority of the care for A.G.S.  Paternal Grandmother has health issues and is unable to provide care for either of the Children.  *Id.* For a complete discussion of the factual and procedural history of this case, please see the trial court's memorandum and order filed on November 7, 2016.

[3] The trial court entered a separate memorandum and order for each child, with two orders attached to each memorandum, one regarding each parent.  The memoranda are identical with regard to the portions that we cite and quote herein.

On April 28, 2015, CYS filed petitions seeking to involuntarily terminate the parental rights of Mother and Father to Children, and filed amended petitions on November 19, 2015. The trial court held evidentiary hearings on the petitions on July 31, 2015; December 2, 11, 14, and 18, 2015; January 25 and 26, 2016; and July 15, 2016.[4]

Importantly, the trial court found the following from the testimony of Foster Parents:

> The court finds the testimony of [Foster Mother] credible. [The Ls] live in McKean County. They have been married for over 29 years. They have served as foster parents since October 2001. [A.G.S.] was placed with them in October of 2014. [M.R.S.] was placed with them shortly after her birth and when she was discharged from the hospital. The [Ls] have provided exceptional care for [Children]. [Foster Father] obtained training to recognize and address issues that [A.G.S.] may have due to being born drug addicted. The [Ls] have taken both children to their medical appointments. The [Ls] offered to allow the parents to call their home to obtain information regarding [C]hildren. Mother has called at times. However, "it depends on where she is." Mother has gone several weeks and even months without calling the [Ls]. Mother has sent "about 5 letters and cards" to the [Ls] for [C]hildren. Mother has also sent gifts for [C]hildren to the [Ls]. Mother attended a birthday party for [M.R.S.] that the [Ls] had on June 26, 2015. Mother also attended a visit at the [Ls] on August 16, 2015; and, according to the [Ls], Mother's attendance at the birthday party and the August 2015 visit was "completely appropriate." Father has only called the [Ls] once.

_____

[4] In its memorandum and orders, the trial court summarized the testimony from these hearing dates, and identified the testimony that it found credible and that which it did not. *See* Termination Op. at 1-16.

- 3 -

> [Children] are very bonded with the [Ls] and their children. The girls recognize the [Ls] as their primary caretakers and are very affectionate toward them. The [Ls] "adore those girls" and would adopt them if that is an option.
>
> . . .
>
> The court finds the testimony of [Foster Father] credible. [Foster Father] reaffirmed the testimony provided by [Foster Mother]. He explained that [M.R.S.] was discharged to his care [from] the hospital after he attended a program on how to provide for a child that was born drug dependent. He explained that he and/or his wife take the girls to their medical and other necessary appointments. He indicated that parents have not attended any of the medical appointments that he has taken the girls to[]. He explained that he "loves these kids" and he and his wife would adopt them if that is an option.

Termination Op. at 10.

The trial court found the following credible from the testimony of the

CYS caseworker, Denise Butler:

> [Butler] was assigned as the caseworker for [Children] in November of 2014. When she was first assigned to these cases Mother was still incarcerated and Father was still residing with his Mother, [Paternal Grandmother], in Port Allegheny, PA. Following her release from incarceration Mother was a resident at the Gaudenzia Drug and Alcohol Treatment Program in Erie, PA. Caseworker Butler scheduled bi-weekly visits with Mother and the children at Gaudenzia. After Mother was unsuccessfully discharged from Gaudenzia the court temporarily suspended visits with Mother. Mother advised caseworker Butler that she was discharged from Gaudenzia "the first time as she got into a fight" with another participant in the program. Mother did not notify caseworker Butler that she had been discharged f[ro]m Gaudenzia. Caseworker Butler later discovered that Mother had left Gaudenzia and had moved in with her parents in Emporium, PA. Father advised Caseworker Butler in January of 2015 that Mother

had been discharged and that she was back in Emporium. Mother contacted caseworker Butler in the summer of 2015 and requested visits and that the Parents as Teachers program be involved with the family again. Mother asked that visits be held in Emporium and the Agency denied this request. There have been two Parents as Teachers sessions in November and December of 2015 (one a month). Mother has attended one medical appointment for [C]hildren (October of 2015).

. . .

Regarding the bond between Parents and [C]hildren Caseworker Butler testified that it was similar to the relationship "with a babysitter." She explained "they ([C]hildren) are familiar with them, they are not scared of them, I mean not interact with them, but like taking [M.R.S.] from the [Ls,] she cries every time I want - I come to pick her up and she reaches for them (Ls/Foster [P]arents) because she doesn't want to go out the door. She doesn't want to go with [Father and Mother]."

*Id.* at 13.

As noted above, on November 7, 2016, the trial court entered the memorandum and orders granting the petitions for involuntary termination of the parental rights of Mother to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[5]

On December 7, 2016, Mother timely appealed from the termination orders. In her brief on appeal, Mother raises one issue:

Whether the trial court abused its discretion in finding that the evidence admitted at trial was sufficient to support an involuntary termination of parental rights?

_____

[5] The orders were dated as filed on November 7, 2016. Notice was not sent to the parties until November 10, 2016.

Mother's Br. at 3.

In reviewing an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we discussed in [**In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. .

**In re Adoption of S.P.**, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). We have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (5), as well as (b).[6] Mother

---

[6] Although the trial court's orders do not expressly state that Mother's parental rights are terminated under section 2511(b), the trial court discussed section 2511(b) and the case law pursuant to that section, and

*(Footnote Continued Next Page)*

- 7 -

argues that the trial court's findings that termination was proper under subsections 2511(a)(1), (2), and (5) were not supported by clear and convincing evidence.[7] We have held that to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of section 2511(a). *In re B.L.W.,* 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc)*. We will focus on subsections 2511(a)(1) and (2), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

*(Footnote Continued)* ───────────────

found it applicable in terminating Mother's parental rights. *See* Termination Op. at 18-21. On appeal, Mother is not challenging the failure of the orders to expressly provide that her parental rights were terminated under section 2511(b).

[7] On appeal, Mother does not argue that the trial court erred in finding termination proper under section 2511(b), and we need not address that provision here. We note, however, that the trial court's finding that termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of Children was supported by the record and was not an abuse of discretion. *See* Termination Op. at 21; 23 Pa.C.S. § 2511(b).

> incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(1), (2).

With respect to subsection 2511(a)(1), our Supreme Court has held that "the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998). Further, this Court has stated:

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (internal citations omitted).

To satisfy the requirements of subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa.Super. 2002).

At the conclusion of its memorandum and order, the trial court stated the following:

> [A.G.S.] and [M.R.S.] have not been in their Parents' physical custody since September of 2014. Even before that time parents struggled to provide proper parental care and control. They were each utilizing illegal controlled substances and dependent on [P]aternal [G]randmother, [M.S.] to provide care [for M.R.S.]. . . . Although Mother indicates now that she will not allow Father to reside with her and the [C]hildren due to his potential drug use (Parents recently had a third child), the Parents' history of interdependency also raises a concern that Parents will re-establish their relationship in the future. Based on their past history the court finds that Parents' recovery is less likely if they reunite.
>
> From the initiation of the dependency action in September of 2014 until August of 2015[,] Mother made very poor progress addressing her addiction. She was unsuccessfully discharged from inpatient treatment on two occasions and she tested positive on several occasions for non–prescribed narcotic use. In August of 2015[,] she obtained a prescription for Subutex and her tests since that date have only been positive for Subutex. She testified in January of 2016 that she and her doctor had plans to "wean her off of Subutex." However, she asserts that that has not yet occurred because she discovered after the January 2016 hearing that she was pregnant with a third child and it was dangerous to her unborn child, who would be born addicted to Subutex, for her to suddenly

- 10 -

stop taking Subutex. Mother's treating physician was not called to provide an opinion regarding Mother's treatment and progress. Therefore, the court has concerns about the reliability of Mother's self-serving statements about her current and future treatment. Mother made no progress regarding any of the requirements of the reunification plans until after August of 2015. From September 2014 until August of 2015[,] she was frequently incarcerated due to violations of her criminal supervision; and, she failed to successfully comp[l]ete inpatient treatment. She had no visits with the children for extended periods of time, did not attend medical appointments for the [C]hildren or meet with and complete ordered services such as Parents as Teachers. Mother asserts that she couldn't attend visits, etc. because she was in jail or inpatient treatment - and, in a technical sense this is true. However, this argument ignores the fact that she was in jail or in inpatient treatment because she utilized controlled substances and did not successfully complete treatment. Therefore, the source of the lack of contact and progress goes directly back to Mother's drug use and drug addiction. Mother has made greater progress since August of 2015 when she was prescribed Subutex. She has attended visits on a more regular basis. However, she has not completed the Parents as Teachers Program and her housing situation still appears to be unclear. Mother continues to struggle[] to meet her basic needs.

. . .

Regarding the specific assertions for termination the court finds:

23 Pa. C.S. § 2511(a)(1): . . . Regarding Mother, from September of 2014 until August of 2015 she also: made limited efforts to maintain contact with the children; failed to successfully follow her drug and alcohol treatment plan; and, failed to maintain contact with and productively cooperate with service providers and [CYS]. She made greater progress after August of 2015 when she obtained a prescription for Subutex. However, the relevant time period regarding 23 Pa.C.S. §2511(a)(1) is up to the time of the filing of the termination petition which was April 28, 2015. Therefore, the court finds that the requirements of (a)(1) have been shown. Further, even after August of

- 11 -

2015 reunification was still not possible. Mother had made some progress but still: had not completed the Parent's as Teachers program; had limited contact with [C]hildren and, therefore, limited bond with them; had a third child born addicted to narcotics; was still involved in an unsettling relationship with Father; and had an unclear housing plan.

23 Pa. C.S. § 2511(a)(2): as discussed above the court finds that [M.R.S.] and [A.G.S.] have been without proper parental care and control since prior to when they were placed in CYS's custody in September of 2014. Further, the court finds that the parents['] incapacity, which centers around, but is not solely limited to, their narcotic use and addiction, will not be remedied by the parents in the near future. Therefore, CYS had demonstrated, by clear and convincing evidence, that the grounds for (a)(2) have also been met.

Termination Op. at 17-21.

We conclude that sufficient evidence supported the trial court's finding that termination of Mother's parental rights was proper pursuant to subsections 2511(a)(1) and (2) and that the trial court did not abuse its discretion. Accordingly, we affirm the orders terminating Mother's parental rights with regard to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2017

- 12 -